IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CATHERINE EALY-SIMON and )
KRISTIN WILSON, individually and on )
behalf of all other similarly situated ) NO. 3:20-cv-00521
individuals, ) JUDGE RICHARDSON
 )
    Plaintiffs, )
 )
v. )
 )
CHANGE HEALTHCARE )
OPERATIONS, LLC, )
 )
    Defendant. )

## **MEMORANDUM OPINION**

Pending before the Court is Plaintiffs' Motion for Conditional Certification of this case as a Collective Action. (Doc. No. 23, "Motion"). Defendant responded in opposition (Doc. No. 28), and Plaintiffs replied (Doc. No. 32). The Motion is ripe for review.

For the reasons discussed below, Plaintiffs' Motion (Doc. No. 37) will be granted in part.

### **BACKGROUND**[1]

---

[1] Unless otherwise noted, the facts set forth in this section are allegations taken from Plaintiffs' Complaint (Doc. No. 1) and the four declarations attached to the Motion. At the conditional certification stage, the black-letter rule is that "the court accepts as true the plaintiff's allegations[.]" *Jones v. H&J Restaurants, LLC*, No. 5:19-CV-105-TBR, 2020 WL 759901, at *2 (W.D. Ky. Feb. 14, 2020) (quoting *Dominguez v. Don Pedro Rest.*, No. 2:06 cv 241, 2007 WL 271567, at *2 (N.D. Ind. Jan. 25, 2007)). But the Sixth Circuit has explained (and the Court discusses further below) that plaintiffs seeking conditional certification are required to make a "modest factual showing." *See, e.g.*, *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). "Although some district courts have not required plaintiffs to present additional factual support beyond his or her own allegations at the conditional certification stage, . . . . [t]he requirement of a 'modest factual showing' necessarily requires some factual showing. Axiomatically, allegations do not meet the definition of a 'showing.' " *Tyler v. Taco Bell Corp.*, No. 215CV02084JPMCGC, 2016 WL 3162145, at *4 (W.D. Tenn. June 3, 2016) (internal citations and emphasis omitted). So allegations alone, no matter how dispositive on the issue they would be if true, do not suffice to make the required "showing." In this sense, the black-letter rule that

1

Plaintiffs Catherine Ealy-Simon and Kristin Wilson ("Plaintiff Ealy-Simon" and "Plaintiff Wilson," collectively "Plaintiffs") brought this action individually and on behalf of all others similarly situated pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. (Doc. No. 1 at ¶ 1).

Defendant provides call center services and operates an outsourced call center for large physician groups, hospitals, and health systems. (*Id.* at ¶ 2). Defendant employs hourly call center employees, known as Patient Service Representatives ("PSRs"),[2] in multiple call center facilities throughout the United States, including in Port St. Lucie, Florida. (*Id.* at ¶¶ 3, 4). Aerotek, a nonparty which provides recruiting and staffing services, hired and employed Plaintiff Ealy-Simon and assigned her to work as a PSR at Defendant's call center in Port St. Lucie. (*Id.* at ¶ 6).

---

allegations are accepted as true appears to be in conflict with Sixth Circuit law, raising the question of what (if any) allegations can be accepted as true by this Court for purposes of the Motion. For purposes of the instant Motion, it suffices to say that the Court is not accepting the material and disputed allegations of Plaintiffs as true merely because they have been alleged. As for the allegations presented in this section in particular, they are used to lay out the background of this lawsuit and generally are supported by Plaintiffs' evidence and/or not in dispute.

    The Court further notes that "when determining whether Plaintiff has met [her] evidentiary burden, a court does not resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations at this first stage." *Turner v. Utiliquest, LLC*, No. 3:18-CV-00294, 2019 WL 7461197, at *3 (M.D. Tenn. July 16, 2019) (citing *Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1072 (M. D. Tenn. 2015)). Thus, to the extent that Plaintiffs' showing supports the existence of certain facts or circumstances, the Court cannot rule against Plaintiffs on the ground that those facts and circumstance actually do not exist; that is, it generally accepts as true the testimony set forth in Plaintiffs' declarations to the extent it is admissible under the Federal Rules of Evidence and not inherently incredible.

[2] Though the Court adopts this term (from the parties' briefing) to refer to the type of employee at issue, Defendant has used myriad other terms to refer to this position, including: "Agent, AR Support/Customer Service, Call Center Advocates, Call Center Representatives, CSRs, Customer Service Representatives, Customer Service Representatives/Medical Appointment Setters, Customer Service Reps, Eligibility Liaisons, Health Care Representatives, Healthcare Customer Service Representatives, Healthcare Representatives, Hospital Solutions Operators, Medical Call Center Reps, Medical Records Coordinators, Patient Service Representatives, Product Support Analysts, and PSRs." (Doc. No. 1 at ¶ 68).

Defendant hired and directly employed Plaintiff Wilson as a PSR at the facility in Port St. Lucie. (*Id.*). Defendant requires its PSRs to work a full schedule and overtime, but it does not compensate them for all hours worked. (*Id.* at ¶ 10).

PSRs are required to perform compensable work tasks before and after their shifts and during meal periods inasmuch as they are required to turn on their computers, launch the computer networks, software programs, applications and phone systems required to take calls. (*Id.*). The pre-shift startup and log-in process typically takes 10-20 minutes. (*Id.* at ¶ 81). PSRs have one unpaid 30-minute meal period each shift, but PSRs must end their meal period early in order to unlock their computers and log in to the needed programs, which takes around 5-10 minutes. (*Id.* at ¶¶ 88, 91). After the end of a shift, logging out and shutting down a computer takes approximately 5 minutes. (*Id.* at ¶ 94). Despite these log-in and log-out procedures, PSRs are paid only for the time they are connected to Defendant's phone system and are available to make and take phone calls. (*Id.* at ¶ 10).

The Complaint asserts three counts: (1) a collective action for violation of the FLSA for failure to pay overtime wages, (2) a nationwide class action for breach of contract under Fed. R. Civ. P. 23, and (3) a nationwide class action for unjust enrichment under Fed. R. Civ. P. 23.

The Motion relates to the first Count only. Via the Motion, Plaintiffs seek to conditionally certify a class of allegedly similarly situated workers allegedly denied unpaid overtime wages under the FLSA. (Doc. No. 23 at 9). In support of the Motion, Plaintiffs filed declarations from each of the two Plaintiffs and two proposed putative opt-in Plaintiffs. Plaintiffs ask the Court (1) to conditionally certify this case as a FLSA collective action under 29 U.S.C. § 216(b) on behalf of similarly situated employees; (2) to require Defendant to identify all putative FLSA Collective members by providing a list of names and contact information within ten days of the Court's

decision; (3) to permit Plaintiffs' Counsel to send notice via mail, email, and text message, and (4) to approve a 60-day opt-in period from the date notice is sent, with a reminder postcard and email sent 30 days into the notice period to those who have not opted in. (Doc. No. 23 at 1).

In support of its opposition, Defendant filed several declarations. (Doc. Nos. 29, 30, 31).

## LEGAL STANDARD

### A. Conditional Certification

The FLSA provides that a collective action may be maintained against any employer by one or more employees for and on behalf of themselves and other employees similarly situated. 29 U.S.C. § 216(b). Because the FLSA requires only that employees be similarly situated, plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class action under Federal Rule of Civil Procedure 23. *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). Also, unlike class actions under Federal Rule of Civil Procedure 23, FLSA collective actions require similarly situated employees to "opt-in" as plaintiffs. 29 U.S.C. § 216(b).

Typically, courts employ a two-phase inquiry to address whether the named plaintiffs are similarly situated to the employees they seek to represent. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). "The first [phase] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Id.* at 546 (internal quotation marks omitted).

At the first stage, the plaintiff bears the burden of showing that employees in the class are similarly situated. *Benson v. Asurion Corp.*, Case No. 3:10-cv-526, 2010 WL 4922704, at *2 (M.D.

4

Tenn. Nov. 29, 2010). Conditional certification requires only a modest factual showing, and district courts should use a fairly lenient standard that typically results in certification. *Comer*, 454 F.3d at 547. At the first stage, the court does not resolve factual disputes, decide substantive issues related to the merits of the case, or make credibility determinations. *Roberts v. Corr. Corp. of Am.*, Case No. 3:14-cv-2009, 2015 WL 3905088, at *10 (M.D. Tenn. June 25, 2015).

Although the required factual showing is "modest," it cannot be satisfied simply by unsupported assertions. *Medley v. Southern Health Partners, Inc.*, Case No. 1:17-cv-00003, 2017 WL 3485641, at * 5 (M.D. Tenn. Aug. 15, 2017). In other words, conclusory allegations are insufficient to support conditional certification. *Arrington v. Michigan Bell Tel. Co.*, No. 10-10975, 2011 WL 3319691, at * 4 (E.D. Mich. Aug. 1, 2011) (citing 7B Wright, Miller & Kane, Federal Practice & Procedure § 1807 (3d ed. 2005) at 490-91). This is true even if the conclusory allegations are asserted not merely in a complaint, but rather in a (sworn) plaintiff's declaration. *See McKinstry v. Dev. Essential Servs., Inc.*, No. 2:16-cv-12565, 2017 WL 815666, at * 2 (E.D. Mich. Mar. 2, 2017) (noting that *Arrington*'s rule applies even to assertions made in a declaration). The named plaintiff must present some factual support for the existence of a class-wide policy or practice that violates the FLSA. *Medley*, 2017 WL 3485641, at *5. A plaintiff must submit evidence establishing at least a colorable basis for her claim that a class of similarly situated plaintiffs exists. *Id.*; *Swinney v. Amcomm Telecom., Inc.*, No. 12-12925, 2013 WL 28063, at *5 (E.D. Mich. Jan. 2, 2013). At the first stage, a plaintiff must present substantial allegations supported by declarations; if the plaintiff meets that burden, a court, in its discretion, may conditionally certify the case as a collective action. *Medley*, 2017 WL 3485641, at *5.

"[T]he certification is conditional and by no means final." *Comer*, 454 F.3d at 546. After discovery, the defendant may move for decertification of the conditional class, which triggers the

second phase of the court's review. *See O'Brien*, 575 F.3d at 583. At this second stage, the court has access to more information and employs a "stricter standard" in deciding whether class members are, in fact, similarly situated. *Comer*, 454 F.3d at 547.

    B.  <u>Similarly Situated</u>

Although the FLSA does not define the term "similarly situated," the Sixth Circuit has held that "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. Employees also may be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* Indeed, "[s]howing a 'unified policy' of violations is not required." *Id.* at 584.

As noted above, to obtain conditional certification, a plaintiff must submit evidence establishing at least a colorable basis for her claim that a class of similarly situated plaintiffs exist. *Swinney*, 2013 WL 28063, at * 5; *O'Neal v. Emery Fed. Credit Union*, No. 1:13-cv-22, 2013 WL 4013167, at * 5 (S.D. Ohio Aug. 6, 2013). Certification at the first (or "notice") stage, although governed by a lenient standard, is not automatic. *Harriel v. Wal-Mart Stores, Inc.*, Civil Action No. 11-2510, 2012 WL 2878078, at *4 (D.N.J. July 13, 2012). "A plaintiff must show a 'factual nexus' between his or her situation and the situation of other current and former employees sufficient to determine that they are similarly situated." *Id.*

## ANALYSIS

### I.    **Motion for Conditional Certification**

The Motion involves the first (notice) stage and seeks only conditional, not final, certification. The proposed class (which is sometimes referred to as a "collective" in situations

6

involving a collective action under the FLSA rather than a class action under Federal Rule of Civil Procedure 23) comprises:

> All similarly situated current and former Patient Service Representatives and similar job titles who work or have worked for Change Healthcare Operations, LLC ("Defendant") at any of its call center facilities at any time during the three years preceding the filing of the Complaint through judgment.

(Doc. No. 23 at 9). Plaintiffs argue that they have demonstrated that they are similarly situated to putative members because the lack of overtime pay stemmed from Defendant's common policy. (*Id.* at 26). Specifically, Plaintiffs point to a common timekeeping system, log-on instructions, and similar job duties. (*Id.* at 26-29). To support their Motion, Plaintiffs rely on the Complaint, four employee declarations, pre-shift login instructions, and similar job postings for PSRs from different states. The Declarations are from Plaintiffs Ealy-Simon and Kristin Wilson, as well as Veronda Delancy and Patrice Johnson ("Proposed Opt-In Plaintiffs"), who indicate they would opt-in as plaintiffs if the collective action is certified.

In her Declaration, Plaintiff Ealy-Simon describes other PSRs at her facility participating in the same unpaid work, during their pre-shift, post-shift, and meal breaks, in which she allegedly participated.[3] (Doc. No. 23-6 at ¶¶ 16, 21, 26). Before work, according to Plaintiff Ealy-Simon, the startup and login process[4] took about 10-20 minutes per shift, or longer depending on technical

---

[3] As discussed, the Court accepts the statements in Plaintiffs' declarations as true for purposes of ruling on the Motion and does not resolve the merits of Plaintiffs' claims. *Jones*, 2020 WL 759901, at *2.

[4] This process consisted of:

- Locate our workstation and turn on the computer;
- Unlock the computer screen by punching in an assigned username and passcode;
- Log into Citrix;
- Log into Epic;

7

issues, and that she was not paid for this time. (*Id.* at ¶¶ 10-17). Before the end of her lunch break, Plaintiff Ealy-Simon had to spend 5-10 unpaid minutes logging back into her programs. (*Id.* at ¶¶ 18-22). At the end of her shift, Plaintiff Ealy-Simon would have to log out and shut down her computer, which took around five unpaid minutes per shift. (*Id.* at ¶¶ 23-27). The computer programs and phone systems used by the PSRs, including Plaintiff Ealy-Simon, were "integral, indispensable, and important part of work, and we could not perform our jobs effectively without them." (*Id.* at ¶ 4). The job duties and responsibilities of each PSR were largely similar to those of other PSRs:[5] "interacting with health plan members, hospitals and insurance companies through outbound and inbound telephonic contact to review and assess health plan members' eligibility for services, schedule appointments, resolve billing inquiries, process payments, confirm insurance acceptance, and collect and manage accounts receivables." (*Id.* at ¶ 6). Plaintiff Ealy-Simon manually tracked and submitted her time to Defendant using a platform called "SAP Fieldglass." (*Id.* at ¶ 7). Regardless of the time-reporting system used, PSRs were only paid for time spent once

---

- Ensure OCI Jar file is up and running on startup;
- Ensure softphone is open on desktop and that the softphone adaptor is plugged in;
- Authenticate Salesforce from the NYULMC site;
- Answer the security question to verify your identity;
- Log into phone system through the softphone in Salesforce;
- Log into various internal and external email, messaging and communications systems, including Microsoft Outlook, Skype for Business, Microsoft Teams, and the NYU Langone email system;
- Read and respond to work-related emails, chats and instant messages, including important notices, work instructions and training updates; and
- Set our state to "Ready" to accept calls using the adapter

(Doc. No. 23-6 at ¶ 10).

[5] It appears to the Court that Plaintiff was referring here only to the PSRs at Port St. Lucie because, as discussed herein, she does not purport to have knowledge of the workings at other company locations.

8

Case 3:20-cv-00521   Document 36   Filed 01/22/21   Page 8 of 18 PageID #: 293

they were "ready" to take calls, and not for the time spent turning on computers and launching programs before starting work or for shutting the systems down after work. (*Id.* at ¶ 9).

Plaintiff Wilson's Declaration is substantially similar[6] to Plaintiff Ealy-Simon's, but Plaintiff Wilson entered her time into a different software and was directly employed by Defendant. (Doc. No. 23-7 at ¶¶ 7, 8). The Declarations of each of the Proposed Opt-In Plaintiffs is similar to Plaintiff Wilson's, as each of the Opt-In Plaintiffs was directly employed by Defendant and used the same software to enter their time worked. (Doc. No. 23-8 at ¶¶ 7, 8); (Doc. No. 23-9 at ¶¶ 7, 8).

Defendant sets forth several arguments against conditional certification of the proposed class.

First, Defendant argues that it did not employ the Plaintiffs or the Proposed Opt-In Plaintiffs, and that it does not employ any PSRs. (Doc. No. 28 at 9-10). Whether Defendant "employed" Plaintiffs and the Proposed Opt-In Plaintiffs, however, is a merits-based argument that is not relevant at the conditional certification stage.[7] *See Gallardo v. Los Portales Bolivar LLC*, Case No. 1:16-cv-01055, 2017 WL 913805, at *4 (W.D. Tenn. Mar. 7, 2017) (finding that whether defendants "satisfy the FLSA's definition of an 'employer' . . . [is a] fact-bound issue, . . . . properly raised in a Rule 12 motion attacking the sufficiency of the pleadings or a Rule 56 motion

---

[6] The Court is not concerned by the similarities between the declarations. Although the Court understands that a seemingly scripted declaration can undermine the credibility of a declarant and his or her claims, the Court has no reason to believe that the near identical language in the declarations is not accurate or credible. *See Watson v. Advanced Distrib. Servs., LLC*, 298 F.R.D. 558, 564 (M.D. Tenn. 2014) (finding that essentially identical affidavits suggested that plaintiffs had identical experiences and had made identical observations).

[7] The Court notes that the sole case Defendant cites for this argument, *Grant v. Shaw Envtl., Inc.*, No. 3:08-CV-350, 2013 WL 1305596, at *2 (E.D. Tenn. Mar. 28, 2013), did not arise in the FLSA conditional class certification context.

9

for summary judgment"); *Martinez v. First Class Interiors of Naples, LLC*, No. 3:18-CV-00583, 2019 WL 4242409, at *5 (M.D. Tenn. Sept. 6, 2019). The Court declines to reach this argument at this time.

Second, Defendant argues that Plaintiffs are not sufficiently similar to putative opt-in members (other PSRs) in the proposed class, arguing that Plaintiffs have not advanced a policy or common theory under which Plaintiffs plan to proceed. As previously noted, "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. Employees also may be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.*

Defendant points to various differences that exist among PSRs, arguing that these differences evidence that Plaintiffs allege circumstances particular to them, instead of a common theory among all PSRs. (Doc. No. 28 at 15-16). Defendant states that there are two general types of PSRs: Patient Access PSRs and Physician Services PSRs. (*Id.* at 3). Defendant states that job duties of a PSR vary significantly based on which customer they support, and Plaintiffs and the Proposed Opt-In Plaintiffs all worked at the same location which served a single customer. (*Id.* at 3-4). Thus, Defendant suggests, their duties were site-specific and therefore not representative of the duties of PSRs company-wide. Defendant states that company-wide, PSRs have worked for around 214 different managers and supervisors. (*Id.* at 6). Defendant states that PSR job duties vary by the level and experience, with some PSRs performing different job duties or being part-time. (*Id.* at 6-7). Finally, Defendant states that a PSR's job duties will vary based upon their

10

individual action. (*Id.* at 7). Defendant argues that despite these differences, Plaintiffs present evidence regarding only the Port St. Lucie call center. (*Id.* at 14).

Notably, all four Declarations state that the declarant worked on the NYU Langone Health account in Port St. Lucie, Florida. (Doc. No. 23-8 at ¶¶ 2, 16); (Doc. No. 23-9 at ¶¶ 2, 16). None of the declarations indicate that any of the Plaintiffs or the Proposed Opt-In Plaintiffs are aware of the working conditions at other facilities or on other accounts. There is no indication that any of the Plaintiffs or Proposed Opt-In Plaintiffs were aware of the compensation policies or working conditions of PSRs at other facilities or on other accounts. Additionally, the pre-shift log-in instructions submitted by Defendant are clearly marked "NYU Lagone Health," indicating that they applied specifically to the account Plaintiffs and Proposed Opt-In Plaintiffs worked on. (Doc. No. 23-10).

However, the declarations do mention seeing other PSRs at the Port St. Lucia facility logging in before clocking in, "hustling" back from lunch, and shutting down after clocking out. *E.g.*, (Doc. No. 23-6 at ¶¶ 16, 21, 26). The declarations also mention the declarants having conversations with other PSRs about the compensation policies. *E.g.*, (*Id.* at ¶ 33).

As this Court stated last year, in rejecting the defendants' argument that the affidavits of the plaintiffs seeking certification were insufficient to show that plaintiffs and putative class members suffered the same FLSA-violating policy because the affidavits (supposedly) contained only conclusory statements were not based on personal knowledge:

> This Court has routinely held that the "personal observations" of other employees and conversations had or overheard at work are sufficient to demonstrate personal knowledge of FLSA-violating policies and are not "mere conclusory allegations." *Burgess v. Wesley Fin. Grp, LLC*, Case No. 3:16-cv-1655, 2017 WL 1021294, at *4 (M.D. Tenn. Mar. 16, 2017). For example, in *Amos v. Lincoln Prop. Co.*, Case No. 3:17-cv-37, 2017 WL 2935834 (M.D. Tenn. July 7, 2017) (Trauger, J.), this Court held that the plaintiff's statements that she learned through personal visits and conversations that other business managers, like her, were "expected to

11

> work in excess of 40 hours per workweek without being paid an overtime wage" were not "mere conclusory allegations." *Id.* at *3-4. Rather, this Court found that such statements regarding the pay policies applied to, and the hours worked by, other business managers were based on "[f]irst-hand experience" and "personal observations" and were, therefore, sufficient to support conditional certification. *Id.* at *4. Like those in *Amos*, the affidavits of Plaintiffs and Mr. Torres contain statements regarding direct observations of and conversations with other drywall workers, demonstrating that Plaintiffs and [one other declarant] have personal knowledge that [other putative class members] who worked similar hours and performed similar duties were denied overtime pay in violation of the FLSA. Brito Aff. ¶¶ 7, 8, 10; Martinez Aff. ¶¶ 7, 8, 10; Castro Aff. ¶¶ 7, 8, 10; Torres Aff. ¶¶ 7, 8, 10. These representations are not merely conclusory as Defendants suggest; rather, they are sufficient to demonstrate that Plaintiffs and putative members of the [proposed class] are similarly situated to each other.

*Martinez v. First Class Interiors of Naples, LLC*, No. 3:18-CV-00583, 2019 WL 4242409, at *5 (M.D. Tenn. Sept. 6, 2019). This means that Plaintiffs here should be, and are, deemed to have established adequate personal knowledge as to the relevant situations of other putative class members at Port St. Lucie and whether they are similar.

But the declarations have not shown personal knowledge as to putative class members who work elsewhere, which could present a problem for certification of any class with a scope outside of Port St. Lucie. But in their Reply, Plaintiffs state that they nevertheless have shown that all PSRs (whatever their location) are similar because Defendant admits that PSRs must log in before clocking in. In her Declaration, Dasha Cates, Defendant's Executive Director for Patient Access supervising approximately 600 PSRs and their managers, states that:

> The only activity PSRs have to do before clocking-in for work is log-in to their computer—which consists of a 5-second task of entering a user name and password. Once they are logged-in to the computer, PSRs click on an icon for the "PingOne" application which enables them to clock-in to the Kronos system. Temporary employees enter their time manually at the end of each week using the Fieldglass system, so they could not perform any off-the-clock work.

(Doc. No. 26 at ¶ 25); *see also* (Doc. No. 28 at 9). Plaintiffs point the Court to *Serbay v. Dialogdirect, Inc.*, No. 16-12716, 2017 WL 163866 (E.D. Mich. Jan. 17, 2017) where the court

12

held that "defendants admit to the basic premise of plaintiff's case—that a CSR has to log in to a computer before being paid for time at work. This is enough to meet the 'fairly lenient' evidentiary standard for conditional certification of a collective action under the FLSA." *Id.* at *5. The court in that case further noted that:

> The declarations reflect that timekeeping practices varied by call center and client team. Defendants acknowledge a timekeeping system across all call centers that fits the mold of plaintiff's claim enough to warrant further scrutiny. Specifically, CSRs are required to log in to the computer and a timekeeping program to "clock in" for work. Together with plaintiff's declaration, these submissions provide a sufficient basis for a colorable claim that a single FLSA-violating policy exists as to the CSRs at each of the call centers.

*Id.* Similar to Plaintiffs, the plaintiffs in *Serbay* alleged that they were not paid for pre-shift and post-shift work comprising logging in and shutting down their computers, nor paid for logging in during their lunch breaks. *Id.* at *1. The court found that the defendants' admission that the plaintiffs had to do some work before logging in, together with the plaintiff's declarations, was sufficient to warrant conditional class certification. *Id.* at *5.

Based on *Serbay*, Plaintiffs conclude that the putative class members' claims are unified by a common theory of FLSA violations since Defendant admits that all PSRs were required to log in and be "phone ready" before being paid. (Doc. No. 32 at 2). Though Defendant implies that this (supposedly) 5-second task is not enough to constitute a FLSA violation,[8] the Court does not consider merits-based arguments (such as that a task was merely *de minimis*) when ruling on a motion for conditional class certification. *See Roberts v. J.R. Eng'g, Inc.*, No. 5:19-CV-00110,

---

[8] The Court understands the gist of this argument; after all, if the time spent is as short as a mere five seconds (or even somewhat longer), it may be *de minimis* and thus not grounds for an FLSA claim. *See White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012); *Arnold v. Schreiber Foods, Inc.*, 690 F. Supp. 2d 672, 685 (M.D. Tenn. 2010). But the Court cannot accept at this stage the assertion that the applicable time span is only five seconds (or a little bit longer), and even five seconds conceivably could be in violation of the FLSA, albeit just barely.

13

2019 WL 5653340, at *7 (N.D. Ohio Oct. 31, 2019). The Court agrees with Plaintiffs; Defendant's admission that PSRs must log on before being paid, taken with Plaintiffs' declarations, is enough for Plaintiffs to meet their modest factual showing that members of the class are sufficiently similar. *See Comer*, 454 F.3d at 547.

Additionally, the Court does not find the differences pointed to by Defendant between various PSRs to be convincing at this stage. The Court has previously found that:

> [A]lthough the putative class members may have different job titles, or work on different campaigns, or even work in different environments (a brick and mortar location versus work from home), the class members share similar characteristics in that their job involves taking calls from customers and responding to their complaints, concerns, or issues. Significantly, each declarant avers that he or she is subject to Defendant's policy that all CSRs and WFH agents should have their computer systems prepared (*i.e.*, "call ready") before clocking in and regardless of the clock in procedure used. The different methods by which putative class members are able to clock-in does not change the fact that Defendant's alleged policy applies to them. Further, the declarants aver that they know this policy applies company wide.

*Foster v. Sitel Operating Corp.*, No. 3:19-CV-00148, 2020 WL 1640427, at *8 (M.D. Tenn. Apr. 2, 2020) (internal citations to the record omitted). In *Foster*, the Court was aided by declarations from employees from various locations, and here all declarations from employees are from one location. But just as the declarants in *Foster* swore to the existence of a company-wide policy, here Defendant itself admits that there is a company-wide policy that putative class members complete some work (even if allegedly *de minimis*) prior to the period for which they are paid. This admission is backed up by the declarations filed by Plaintiffs, which evidence the existence of this policy (albeit only be reference to a single location). Therefore, the Court is unpersuaded by Defendant's arguments regarding the differences between PSRs.

Defendant also argues that its policies and procedures mandate compliance with the FLSA. (Doc. No. 28 at 8). However, the alleged fact that Defendant has a written policy that complies

14

with the FLSA does not defeat a motion for conditional class certification. *See Hamric v. True N. Holdings, Inc*, No. 1:16-CV-01216, 2016 WL 3912482, at *2 (N.D. Ohio July 20, 2016) ("Defendant cannot defeat conditional certification, or require a higher burden of proof, merely by pointing to a written policy that True North complied with the FLSA."); *Foster*, 2020 WL 1640427, at *6. Moreover, to the extent that Defendant has a policy and/or procedure requiring work (even if allegedly only five seconds) for which putative class members are not paid, the policy or procedure well may not be compliant with the FLSA. So at this stage, this argument does not move the needle for Defendant.

Finally, as an alternative to the class Plaintiffs seek, Defendant requests the class be limited to Port St. Lucie employees. (Doc. No. 28 at 17). The Court realizes that the declarations filed by Plaintiffs might not support a class extending beyond Port St. Lucie. But since Defendant has admitted that all PSRs are required to log in before clocking in, a basic theory of Plaintiffs' claim of FLSA violations, the Court will not limit the class to Port St. Lucie employees.

Therefore, the Court finds that Plaintiffs have satisfied their burden of making a modest factual showing that Plaintiffs and the putative class members are similarly situated. *See Comer*, 454 F.3d at 546-47 (" 'The plaintiff must show only that his position is similar, not identical, to the positions held by the putative class members.' ") (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 594 (S.D. Ohio 2002)). "If discovery later shows the claims in this case to be so individualized as to render a collective action unmanageable, [Defendant] may move to decertify the collective action at the second stage of the certification proceedings." *Cowan v. Nationwide Mut. Ins. Co.*, No. 2:19-cv-1225, 2019 WL 4667497, at *8 (S.D. Ohio Sept. 25, 2019). And thus the Court will certify the proposed class.

Certifying such a class at this stage is hardly a novel step; as a district court in this circuit has explained, "the vast majority of United States District Courts have routinely granted conditional certification to call center employees alleging similar 'off-the-clock' FLSA violations." *Fisher v. Mich. Bell Tele. Co.*, 665 F. Supp. 2d 819, 826 (E.D. Mich. 2009) (collecting cases).

## II. Notice

Although a plaintiff in an FLSA action is not required to affirmatively seek the district court's approval to send out notices, a district court may exercise its broad discretion under the FLSA to facilitate notice to potential collective action plaintiffs. *See Hoffmann–La Roche v. Sperling*, 493 U.S. 165, 169 (1989); *Woodard v. FedEx Freight E., Inc.*, 250 F.R.D. 178, 185 n. 6 (M.D. Pa. 2008) ("District courts, however, have discretion to 'facilitat[e] notice to potential plaintiffs' of the pending collective action.") (citation omitted)). The Supreme Court has explained that "[b]y monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." *Hoffman–LaRoche*, 493 U.S. 165 at 172.

In regards to notice, Plaintiffs ask the Court: (1) to require Defendant to identify all putative FLSA Collective members by providing a list of names and contact information within ten days of the Court's decision; (2) to permit Plaintiffs' Counsel to send notice via mail, email, and text message, and (3) to approve a 60-day opt-in period from the date notice is sent, with a reminder postcard and email sent 30 days into the notice period to those who have not opted in. (Doc. No. 23 at 1).

Defendant protests that the proposed notice and consent form are overbroad and misleading and that the method for distributing notice is overreaching. (Doc. No. 28 at 19). Defendant has requested that, if the Court grants Plaintiffs' Motion, Defendant be allowed 14 days to submit an

16

Case 3:20-cv-00521 Document 36 Filed 01/22/21 Page 16 of 18 PageID #: 301

alternate version of the notice and consent form, and/or that the Court order the parties to meet and confer regarding the content and form of these documents. (Doc. No. 28 at 19). Defendant additionally requests that the Court limit the method of notice to regular mail and limit the production of information to names and addresses only.[9] (*Id.* at 20).

In the Order accompanying this Memorandum Opinion, the Court will direct the parties to meet and confer regarding the substance of the notice and the notice and consent protocol, and then submit a joint report to the Court no later than fourteen days after the date of the accompanying Order. If the parties cannot agree on a protocol, or the language of the notice, then by that same date (1) Plaintiffs shall file their proposed notice and consent protocol, and (2) Defendant shall separately file specific objections as to points of disagreement. If this occurs, Plaintiffs may respond to Defendant's objections within five days. The Court will consider extending this time frame if requested.

While explicitly opposing some aspects of Plaintiffs' requested notice procedures (*i.e.*, the supplying of certain categories of information and the form of a reminder notice), Defendant does not indicate whether it opposes, or otherwise respond to, other aspects of Plaintiffs' request (*i.e.*, whether there should be a reminder notice, the appropriateness of a sixty-day notice period, the availability of electronic consent to join forms). Because Defendant has not briefed all aspects of Plaintiffs' request, the Court will defer ruling on the areas Defendant has briefed (such as limiting the method of notice to regular mail and limiting the production of information to names and addresses only) until the parties have had an opportunity to meet and confer regarding the other aspects of notice. Additionally, the Court will defer setting a deadline for Defendant to identify

---

[9] Defendant also argues that Plaintiffs should not be allowed to collect social security numbers. (Doc. No. 28 at 20-21). The Court does not see anywhere in the Motion that Plaintiffs requested social security numbers.

17

potential class members (which Plaintiffs requested to be ten days after entry of the accompanying Order) until after the parties have had an opportunity to meet and confer regarding notice procedures and the categories of information that should be provided by Defendant. Any issues the parties are not able to resolve shall be brought to the Court's attention via briefing filed by the date(s) outlined above (and in the accompanying Order).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Conditional Class Certification (Doc. No. 37) will be GRANTED in part. The Court conditionally certifies this matter as a collective action consisting of all similarly situated current and former PSRs and similar job titles who work or have worked for Change Healthcare Operations, LLC at any of its call center facilities at any time during the three years preceding the filing of the Complaint through judgment.

In addition, the parties shall meet and confer regarding the substance of the notice and the notice and consent protocol within the timeline set forth in this Memorandum and the accompanying Order. The Court defers ruling on the substance of the notice and the proposed notice and consent protocol until the parties have conferred and filed their joint or separate briefing.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE