## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

Subject to the approval of the United States District Court for the Middle District of Tennessee (the "Court"), Plaintiffs Catherine Ealy-Simon, Kristin Wilson, VeRonda DeLancy, and Patrice Johnson, and Defendant Change Healthcare Technology Enabled Services, LLC ("the Parties"), by and through their counsel, agree to the following Settlement Agreement and Release ("Agreement").

## RECITALS

A.     Named Plaintiffs Catherine Ealy-Simon and Kristin Wilson ("Named Plaintiffs") formerly worked as Patient Service Representatives ("PSRs") at a call center in Port St. Lucie, Florida, operated by Change Healthcare Technology Enabled Services, LLC ("Change" or "Defendant").  On June 22, 2020, the Named Plaintiffs filed an action that is currently titled *Ealy-Simon, et al. v. Change Healthcare Technology Enabled Services, Inc.*, No. 3:20-cv-00521, in the United States District Court for the Middle District of Tennessee (the "Litigation") [Dkt. 1].[1]

B.     In the Litigation, the Named Plaintiffs asserted claims against Change for violations of the Fair Labor Standards Act ("FLSA") and state law claims for breach of contract and unjust enrichment, alleging that Change failed to pay them wages for all hours worked. Specifically, the Named Plaintiffs claimed that Change required or permitted them to perform work before and after their scheduled shifts and during unpaid meal breaks, without compensation.  The Named Plaintiffs sought damages, attorneys' fees and costs, on their own behalf and on behalf of other allegedly similarly situated PSRs who had worked at Change call

---

[1]The Litigation was originally filed against Change Healthcare Operations, LLC.  By Stipulation of the parties dated February 5, 2021 [Dkt. 38], and approved by an Order of the Court dated February 8, 2021 [Dkt. 40], Change Healthcare Technology Enabled Services, LLC, was substituted as the proper defendant.  Throughout this Agreement, the Parties will refer to Change Healthcare Technology Enabled Services, LLC, as the Defendant.

1

centers nationwide, whom they claim also were not paid for all hours worked.

C.     On June 26, 2020, the Named Plaintiffs filed the Consent to Join on behalf of Opt-In Plaintiff VeRonda DeLancy, and on August 10, 2020, they filed the Consent to Join on behalf of Opt-In Plaintiff Patrice Johnson ("Opt-In Plaintiffs"). [Dkts. 9, 19]

D.     On August 14, 2020, Change filed its Answer to the Complaint, denying the claims and allegations in the Complaint and denying that it had violated the FLSA or that it was liable for breach of contract or unjust enrichment.  [Dkt. 20]

E.     On September 2, 2020, Plaintiffs filed a Pre-Discovery Motion for Conditional Collective Certification and Court-Authorized Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. §216(b), requesting that the Court permit them to issue notice of the case to all PSRs who worked at Change call centers from June 22, 2017, to the present.  [Dkt. 23]  On October 16, 2020, Change filed its opposition to that motion. [Dkt. 28]

F.     On January 22, 2021, the Court issued a Memorandum Opinion and Order granting Plaintiffs' Motion for Conditional Certification [Dkt.36-37], permitting notice of the litigation to be issued to the following:

> All similarly situated current and former Patient Service Representatives and similar job titles who work or have worked for Change Healthcare Operations, LLC ("Defendant") at any of its call center facilities at any time during the three years preceding the filing of the Complaint through judgment.

G.     Subsequently, the parties agreed to conduct mediation of the claims asserted in the case, prior to notice being issued to putative class members.

H.     During the course of the Litigation, the Parties engaged in fact investigation and informal discovery, providing information related to the claims, defenses and potential damages, including class information, time records, pay records, company policies and training documents. The Parties engaged their own experts to conduct data analyses and to perform calculations of

2

potential damages.

I.      On June 29, 2021, the Parties engaged in a full day of mediation with experienced class action mediator, Michael Russell.  The Parties were unable to reach a settlement on that date, but agreed to continue negotiations.  For the next month or so, the parties continued to engage in extensive arm's-length negotiations, including with the assistance of Mr. Russell, and were able to reach an agreement to settle the claims in the Litigation on a class wide basis as of July 30, 2021, through an executed Memorandum of Understanding.  This Agreement replaces that Memorandum of Understanding.

J.      Based upon the investigation of Class Counsel, the informal discovery that occurred, and taking into account the contested factual and legal issues involved, the expense and time necessary to prosecute the Litigation through formal discovery, class-certification proceedings and trial, the risks and costs of further prosecution of the Litigation, the uncertainties of complex litigation, and the benefits to be received pursuant to this Agreement, the Named Plaintiffs and Class Counsel have concluded that a settlement with Change on the terms set forth in this Agreement is fair, reasonable, adequate, and in the best interests of the Named Plaintiffs and the putative class.  As such, the Named Plaintiffs and Class Counsel have agreed to settle this Litigation with Change on the terms set forth in this Agreement ("Settlement").

K.      Despite this Settlement, Change denies the claims asserted in the Litigation and makes no admission whatsoever of liability under or violation of the FLSA, state wage and hour laws, state common law, or any other applicable law.  Although Change consents to class certification, it does so solely for settlement purposes and does not otherwise waive its right to assert that certification is not proper under Rule 23 or Section 216(b) of the FLSA. Change nevertheless desires to settle the Litigation on the terms set forth in this Agreement for the

purpose of avoiding the burden, expense, and uncertainty of continuing litigation and for the purpose of putting to rest the controversies engendered by the Litigation.

L.     The Parties have agreed to resolve this matter on a Rule 23 class action basis, to address the applicable state law claims, including claims arising under state wage and hour laws, that Plaintiffs could have raised in the Litigation as individuals joined the case who had worked at Change call centers in various states.  The FLSA and all potential state law wage claims are being resolved together through this Settlement.

M.     The Settlement includes all current and former hourly PSRs (defined below) who were directly employed by Change at its call center facilities in the United States at any time from June 22, 2017, through October 28, 2021, or the date on which the Court grants preliminary approval of the settlement, whichever comes first (the "Class Period") (collectively called "Settlement Class Members" or "Class").  Other than Named Plaintiff Ealy-Simon, individuals who worked as PSRs only as temporary contract workers employed by third-party staffing agencies are excluded from the Class.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** among the Parties, by and through their respective attorneys of record, and subject to the approval of the Court, that in consideration of the foregoing and of the promises and mutual covenants contained herein, and other good and valuable consideration, the Litigation shall be settled, released, and dismissed with prejudice, upon and subject to the following terms and conditions.

1.     <u>**DEFINITIONS**</u>

For purposes of this Agreement, the following definitions shall apply, in addition to any other definitions set forth in other sections of this Agreement:

A.     "Class" or "Settlement Class Member" mean all current and former hourly PSRs

and similar job titles who were directly employed by Change at any of its call center facilities at any time during the Class Period.

B.      "Class Counsel" or "Plaintiffs' Counsel" mean the law firms of Sommers Schwartz, P.C. and Greg Coleman Law, P.C.

C.      "Class Notice" means the proposed Notice, in the form attached hereto as Exhibit A, which will be sent to those persons identified as Settlement Class Members on or after Preliminary Approval of the Settlement, to give them notice of the Settlement and class certification for the purpose of Settlement.  The Class Notice provides that any Settlement Class Member who does not opt-out of the Settlement shall be considered to have opted-in to the Litigation under the FLSA.

D.      "Class Period" means the period from June 22, 2017, through October 28, 2021, or the date on which the Court grants preliminary approval of the settlement, whichever comes first.

E.      "Defendant's Counsel" means the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

F.      "Effective Date" shall mean the date on which all of the following have occurred: (i) the Court has granted final approval of the Settlement and has signed and entered an Order so indicating; and (ii) the Court has entered an Order dismissing the Litigation on the merits and with prejudice, except that, if an appeal of the Court's Orders granting final approval and dismissing the Litigation with prejudice is filed, the Effective Date shall be the date on which the appeal (including any requests for rehearing en banc, petitions for certiorari, or appellate review) has been finally resolved and the Court's Orders have been upheld.

G.      "Final Approval" means the order or orders entered by the Court granting final

5

approval of the Settlement after a fairness hearing.

H.     "Net Settlement Amount" means the Settlement Payment net of fees, costs, settlement administration costs, and incentive awards.

I.     "Opt-Out" means a Settlement Class Member who chooses to timely opt-out of the Settlement by submitting an Opt-Out Form during the Opt-Out Period.

J.     "Opt-Out Form" means the form attached hereto as Exhibit B.  This form may be completed by any Settlement Class Member and filed with the Court within the Opt-Out Period in order to effectively object to or opt out of the Settlement.

K.     "Opt-Out Period" means the time period, as provided below and in the notice to Settlement Class Members, during which any and all Settlement Class Members who wish to object to or opt-out of the Settlement must file their completed Opt-Out Forms with the Court.

L.     "Participating Class Member" means a Settlement Class Member who has not opted out of the Settlement.

M.     "Payroll Tax Amount" means the employer's share of the payroll taxes on those portions of the settlement that are paid to a Plaintiff as W-2 wage income.

N.     "Plaintiffs" means Named Plaintiffs, Opt-In Plaintiffs, and Participating Class Members.

O.     "Preliminary Approval" means the order or orders entered by the Court preliminarily approving the terms of the Settlement, certifying the Settlement Class, approving the form of Notice to be sent to Settlement Class Members, and appointing Class Counsel.

P.     "PSR" means individuals who were directly employed by Change during the Class Period as Patient Service Representatives and similar job titles that interacted directly with patients and health plan members.  It does not include individuals who worked as PSRs only as

6

temporary contract workers employed by third party staffing agencies.

Q.      "Released Claims" has the meaning set forth in Section 4, *infra*.

R.      "Released Parties" means Change Healthcare Technology Enabled Services, LLC, including its predecessors and successors and its past, present, and future parents, subsidiaries, owners, officers, directors, employees, agents, insurers, attorneys, and any Change Healthcare, Inc. direct and indirect subsidiaries.

S.      "Settlement Administrator" means the individual or entity designated by Plaintiffs' Counsel, with the reasonable consent of Defendant's Counsel, to serve as the settlement claims administrator in connection with administering the settlement payments provided for in this Agreement.

T.      "Settlement Fund" is the gross Settlement Amount (as defined in Section 2 below) less approved attorneys' fees and costs and less any costs of administering the Settlement.

## 2.      <u>SETTLEMENT AMOUNT</u>

In consideration for the actions, promises, and mutual covenants and releases described herein, Defendant shall pay the total gross sum of Two Million Five Hundred Thousand Dollars and 00/100 cents ($2,500,000.00) (the "Gross Settlement Fund") to resolve and settle the Litigation and all Released Claims as described in Section 4, *infra*. The Gross Settlement Fund includes all amounts to be paid by Defendant, including amounts for payments to the Named Plaintiffs, Opt-In Plaintiffs, and Participating Class Members, and attorneys' fees, litigation costs, and expenses of Class Counsel, and costs incurred in administering this Settlement.  Under no circumstances shall Defendant be obligated to pay an amount in excess of $2,500,000.00, except for the Payroll Tax Amount.

## 3.      <u>NO ADMISSION OF LIABILITY; INADMISSIBILITY OF THIS AGREEMENT</u>

This Agreement is a compromise of disputed claims, and nothing in this Agreement shall

7

be construed or deemed as an admission of liability, damages, culpability, negligence, wrongdoing, or other unlawful behavior, whether by act or omission, on the part of Defendant at any time or for any purpose, under any circumstance. The Parties further acknowledge and agree that neither this Agreement nor the Settlement may be used as or to suggest an admission of liability in any dispute the Parties may have now or in the future with respect to any person or entity, including Defendant and/or the Released Parties. Neither this Agreement nor anything in it, nor any part of the negotiations that occurred in connection with the creation of this Agreement, shall constitute evidence with respect to any issue or dispute in any lawsuit, legal proceeding, or administrative proceeding and shall be inadmissible as evidence in any proceeding, except in an action or proceeding to approve, interpret, or enforce the terms and conditions of this Agreement.

## 4.    <u>**RELEASE AND WAIVER OF CLAIMS**</u>

In consideration of the benefits received and service payment provided for under this Agreement, Named Plaintiff Catherine Ealy-Simon knowingly and voluntarily releases, waives, and discharges, on behalf of herself and her heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, the Released Parties, along with Allegis Group, Inc. and Aerotek, Inc. (including their predecessors and successors and past, present, and future parents, subsidiaries, affiliates, owners, officers, directors, employees, agents, insurers, and attorneys), from all known and unknown claims and rights of any kind that she may have arising out of or in any way based upon her work for Defendant as well as all claims that were or could have been raised in the Litigation. The claims and rights released include, but are not limited to, any common law contract, tort, or other claims as well as any claims arising under the Fair Labor Standards Act,

8

Title VII of the Civil Rights Act of 1964 (as amended); 42 U.S.C. § 1981 (as amended); the Age Discrimination in Employment Act; the Equal Pay Act; the Americans With Disabilities Act (as amended); Sections 503 and 504 of the Rehabilitation Act of 1973; the Family Medical Leave Act; the Employee Retirement Income Security Act; the Occupational Safety and Health Act; the Workers' Adjustment and Retraining Notification Act, as amended; the Florida Civil Rights Act, as amended; Florida Law on Wages/Hours/Payroll, Fla. Stat. §§ 443.071 and 443.171, Fla. Admin. Code § 60BB-2.032; Florida Minimum Wage Law, Fla. Stat. §§ 448.109 to 448.110; Florida Wage Discrimination Law, as amended, Fla. Stat. § 725.07; Florida Wage Payment Law, Fla. Stat. §§ 222.15 and 532.01, et seq.; or arising under any other federal, state, or local law, regulation, or ordinance including any and all claims for attorneys' fees or costs. Except for her release of FLSA claims, which is Court-approved, Plaintiff Ealy-Simon is not releasing claims that applicable law does not permit her to waive such as workers' compensation claims or claims for unemployment compensation or other benefits.

In consideration of the benefits received and the service payments provided for under this Agreement, Named Plaintiff Kristin Wilson and Opt-In Plaintiffs VeRonda DeLancy and Patrice Johnson knowingly and voluntarily release, waive, and discharge, on behalf of themselves, their heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, the Released Parties from all known and unknown claims and rights of any kind that they may have arising out of or in any connected to their employment by Defendant as well as all claims that were or could have been raised in the Litigation. These claims and rights released include, but are not limited to, any common law contract, tort, or other claims as well as any claims arising under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964 (as amended); 42 U.S.C. § 1981 (as

9

amended); the Age Discrimination in Employment Act; the Equal Pay Act; the Americans With Disabilities Act (as amended); Sections 503 and 504 of the Rehabilitation Act of 1973; the Family Medical Leave Act; the Employee Retirement Income Security Act; the Occupational Safety and Health Act; the Workers' Adjustment and Retraining Notification Act, as amended; the Florida Civil Rights Act, as amended; Florida Law on Wages/Hours/Payroll, Fla. Stat. §§ 443.071 and 443.171, Fla. Admin. Code § 60BB-2.032; Florida Minimum Wage Law, Fla. Stat. §§ 448.109 to 448.110; Florida Wage Discrimination Law, as amended, Fla. Stat. § 725.07; Florida Wage Payment Law, Fla. Stat. §§ 222.15 and 532.01, et seq.; or arising under any other federal, state, or local law, regulation, or ordinance, including any and all claims for attorneys' fees and costs. Except for their release of FLSA claims, which is Court-approved, these Named Plaintiffs are not releasing any claims that applicable law does not permit them to waive such as workers' compensation claims or claims for unemployment compensation benefits.

In consideration for the benefits received under this Agreement and on behalf of their respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, Settlement Class Members hereby knowingly and voluntarily release, waive, and discharge the Released Parties from any and all claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, that were or could have been brought in the Litigation or that are based on or reasonably related to claims for unpaid wages, including, but not limited to, the following claims: individual and class/collective claims for unpaid wages (including but not limited to claims for regular wages, overtime, regular rate calculations, and gap time) and other damages and penalties, interest, attorneys' fees or costs, through the Class Period, arising from each Settlement Class Member's work for or employment

with Defendant, including claims arising under the FLSA, or under applicable individual state wage laws, and under state law common law, tort, or other law, such as claims for breach of contract and unjust enrichment. The releases in this Section expressly exclude all other claims that are not based on or reasonably related to claims for unpaid wages (as described in the release language above), including for example claims for retaliation, wrongful termination, unemployment, disability, worker's compensation, and claims outside of the Class Period.

5.     **ALLOCATION OF SETTLEMENT AMOUNT**

    A.     Of the $2,500,000.00 Gross Settlement Fund, $833,333.33 will be allocated as attorneys' fees and $1,666,666.67 will be allocated as a Settlement Fund, less the approved costs of administering the settlement, incentive awards and actual litigation costs. Except as otherwise provided in Section 5.A. of this Agreement, the Parties shall bear their own attorneys' fees, costs, and expenses incurred in the prosecution, defense, or settlement of the Litigation, and the Named Plaintiffs and Class Counsel agree that Class Counsel shall not seek an award of attorneys' fees, costs, or expenses in this Litigation except as set forth in this Section 5.A. The Gross Settlement Fund, inclusive of the Settlement Fund, a service award to the Named Plaintiffs and Opt-In Plaintiffs, attorneys' fees and costs and administrative costs, is subject to the approval of the Court.

    B.     The Parties agree to allocate to the Named Plaintiffs and Opt-In Plaintiffs a reasonable service award in the total aggregate amount of $20,000, to be allocated among the four individuals, from the Settlement Fund, for the time and effort the Named Plaintiffs and Opt-In Plaintiffs spent in connection with pursuing the Litigation, assisting Class Counsel with the fact investigation and strategy, providing declarations and other assistance in connection with the Motion for Conditional Collective Action Certification and securing the settlement in this

11

Litigation (in addition to compensating them for their portion of the overall settlement proceeds).

C.     After the payment for attorneys' fees and the payment for litigation costs and expenses, as outlined in Section 5.A. and payment of the service award referenced in Section 5.C., the Settlement Fund will be allocated to the Named Plaintiffs and Participating Class Members who do not timely opt-out of the Settlement, based on a formula developed by Class Counsel and approved by Defendant and to be calculated by the Settlement Administrator, as follows:

1.     The Settlement Administrator will take the number of workweeks recorded by the Participating Class Member.

2.     For every week in which the Participating Class Member worked in excess of forty (40) hours, the Settlement Administrator will increase the Participating Class Member's workweeks by a quarter (0.25) week.

3.     Next, if the Participating Class Member worked for Defendant in California during the Class Period, the Settlement Administrator will multiply the Participating Class Member's workweeks (adjusted as above) by 3.0. If the Participating Class Member worked for Defendant in Illinois, Massachusetts, New Jersey, or South Carolina during the Class Period, the Settlement Administrator will multiply the Participating Class Member's workweeks (adjusted as above) by 1.5.

4.     The Settlement Administrator then will adjust the Participating Class Member's workweeks (up or down) by a factor that is equal to the ratio of the Participating Class Member's most recent hourly base rate of pay during the Class Period compared to the average most recent hourly base rate of pay of all Participating Class Members during the Class Period.

5.     The Settlement Administrator then will divide the Participating Class Member's

12

workweeks (adjusted as above where applicable) by the total workweeks for all Participating

Class Members (also adjusted as above where applicable).

6.    The ratio yielded by the division done in Sections 5.C.5. above will be multiplied

by the Net Settlement Amount to yield the Participating Class Member's settlement payment.

## 6.    <u>COURT APPROVAL PROCESS AND NOTICES</u>

The Parties agree to cooperate in preparing all motions for preliminary and final Court

approval of the Settlement, in providing the Court with information sufficient to enable it to

determine whether to approve the Settlement and notice, and in addressing other matters needed

to facilitate the approval and administration of this Agreement.  For settlement purposes only, the

Parties agree that: (i) the requirements of Rule 23(e)(2) are met and that the proposed Settlement

is fair, reasonable, and adequate under applicable law; (ii) there are no agreements required to be

identified under Rule 23(e)(3); and (iii) the Named Plaintiffs' attorneys should be appointed as

Class Counsel under Rule 23(g).

### A.    **Preliminary Approval.**

Pursuant to the Parties' Joint Status Report (Dkt. No. 51) and Updated Joint Status Report

(Dkt. No. 52), the Parties will file a Joint Motion for Preliminary Approval of Class Action

Settlement and of Proposed Notice to Settlement Class Members and for Appointment of Class

Counsel with the Court by November 30, 2021.  Through that Joint Motion, the Parties will

request that the Court: (1) approve the Settlement Class; (2) preliminarily approve the Parties'

Settlement; (3) approve the proposed Class Notice, which, once approved, will be sent to the

Settlement Class Members; and (4) appoint the Named Plaintiffs' attorneys as Class Counsel.

For settlement purposes only, Defendant will consent to certification under Fed. R. Civ.

P. 23(b)(3) and final certification of a collective under Section 216(b) of the FLSA of an opt-out

13

class of persons consisting of all current and former hourly PSRs and similar job titles who were directly employed by Change at any of its call center facilities at any time during the Class Period.

The Parties agree that certification for settlement purposes is in no way an admission by Defendant that class certification under Rule 23 or certification under Section 216(b) of the FLSA would be proper absent a settlement or a waiver of any arguments against certification or for decertification that Defendant might later assert. Solely for purposes of settling this lawsuit, the Parties stipulate and agree that the requisites for establishing class certification with respect to the Settlement Class and final certification of the FLSA collective, as defined above, have been and are met.

### B. Notice and Opt Outs

Within ten (10) business days of the Court's Order granting the Joint Motion for Preliminary Approval, Defendant will provide the Settlement Administrator with the names, last-known addresses, last-known telephone numbers, and available personal email addresses for the Settlement Class Members. The Settlement Administrator will keep this information confidential and will not disclose it to any person or entity, including Plaintiffs' Counsel, and will use it only for the purpose of administering this Settlement. However, if the Settlement Administrator identifies an issue with the class data that requires the input of the parties, Defendant's counsel may provide to Plaintiffs' counsel a redacted class list containing only that information needed to resolve the issue (e.g., redacting, at a minimum, names and contact information).

Within ten (10) business days after Defendant provides the Settlement Administrator with the Settlement Class Member information, the Settlement Administrator will mail the Class

Notice to each Settlement Class Member via first-class United States mail and will email the Class Notice to each Settlement Class Member for which Defendant has provided an email address. Unless a Settlement Class Member wishes to opt-out of the Settlement, he or she need not respond to the proposed Notice and will be bound by the terms of the Parties' Settlement and the judgment in this Litigation.

Any Settlement Class Member who wishes to opt out of the Settlement must file an Opt-Out Form with the Court within the Opt-Out Period, which shall be forty-five (45) days from the date of mailing of the Class Notice. Individuals who file a timely signed Opt-Out Form will not be entitled to any monetary award under this Agreement and will not be bound by the Settlement or the judgment in this Action. Defendant expressly retains all defenses with respect to any such Opt-Outs. The statute of limitations for an Opt-Out to assert any claims for individual relief will resume running on the date on which the Opt-Out Form is filed with the Court. An Opt-Out Form that is not filed by the deadline set forth in the Notice will have no force or effect, and the Settlement Class Member who sought to opt out of the Settlement late will be included in the Settlement Class and be bound by the terms and conditions of this Agreement, as approved by the Court.

If more than ten percent (10%) of the Settlement Class Members submit timely signed Opt-Out Forms, then Defendant shall have the absolute right, in its sole discretion and notwithstanding any other provision of this Agreement, to unilaterally rescind or void this Agreement or, at its election, to seek to engage in further negotiations with Class Counsel to potentially modify this Agreement. If Defendant does rescind, this Agreement will be null and void for all purposes as outlined in Section 9 of this Agreement. Defendant shall notify Class Counsel of its intent to withdraw from this Agreement in writing within five (5) business days

15

after the close of the Opt-Out Period or after Defendant learns that more than ten percent (10%) of Settlement Class Members intend to opt out, whichever is later. Defendant will also notify the Court of any such rescission, after which the Court shall enter an Order in accordance with this Agreement as outlined in Section 9 of this Agreement.

**C.    CAFA Notice**

Not later than ten (10) days after the Parties file their Joint Motion for Preliminary Approval, Defendant will serve on the proper persons and entities the notice required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).

**D.    Final Approval**

Within fourteen (14) business days after the close of the Opt-Out Period, and if Defendant has not rescinded this Agreement, the Parties shall file a Joint Motion for Final Approval of Class Settlement, requesting that the Court:

(i)    Grant Final Approval of the Settlement, adjudging the Settlement to be fair, reasonable, and adequate, and directing execution and consummation of its terms and provisions;

(ii)    Dismiss the Litigation on the merits, with prejudice, in accordance with the terms of this Agreement; and

(iii)    Approve Class Counsel's application for an award of attorneys' fees and reimbursement of costs, including settlement-administration costs.

Before issuing the Final Approval Order, the Court will hold a Fairness Hearing under Rule 23(e) on: (a) whether the proposed Settlement should be finally approved as fair, reasonable, and adequate as to the Settlement Class Members; and (b) Class Counsel's application for attorneys' fees and reimbursement of costs. The above-proposed Notice will inform Settlement Class Members of the date, time, and location of the Fairness Hearing.

16

The Court's final approval of the Parties' Settlement is a material term of this Agreement. Failure to achieve the Court's final approval of the Settlement shall render this Agreement void *ab initio*, and neither the Agreement nor the negotiations that led to it may be used as evidence or referred to in any court or administrative proceeding, arbitration, or other proceeding.

## 7. CLAIMS ADMINISTRATION, PAYMENT TO PLAINTIFF AND SETTLEMENT CLASS MEMBERS, AND TAXATION AND NO TAX ADVICE

A. Within thirty-five (35) days after the Effective Date, Defendant shall: (1) pay to the Settlement Administrator the gross Settlement Amount of $2,500,000.00; and (2) provide the Settlement Administrator with the time and pay records for Participating Class Members. If the actual number of the Settlement Class Members identified in the class list Defendant provided to the Settlement Administrator to receive notice exceeds the amount of Settlement Class Members identified by Defendant during the mediation process (3,448) by more than ten percent (10%), Class Counsel shall have the right, and notwithstanding any other provision of this Agreement, to unilaterally rescind or void this Agreement or, at its election, to seek to engage in further negotiations with Defendant to potentially modify this Agreement. Within thirty (30) days after Defendant has provided the Settlement Administrator with the time and pay records for Participating Class Members, the Settlement Administrator shall provide Defendant with its calculation of the Payroll Tax Amount, which amount Defendant shall pay within fourteen (14) days. Once Defendant has paid the Settlement Administrator the Settlement Amount and the Payroll Tax Amount, the Settlement shall be considered fully funded.

B. Once the Settlement is fully funded, the Settlement Administrator shall: (1) issue a check payable to Class Counsel for payment of the Court-approved attorney's fees and costs; and (2) issue settlement checks to Plaintiffs in accordance with the terms of the Agreement and the allocations calculated by the Settlement Administrator.

17

C.    The payment to the Named Plaintiffs and Opt-In Plaintiffs for the service awards shall be payable to them as nonwage payments and reportable on IRS Form 1099.  The remaining settlement payments to the Plaintiffs will consist of two separate settlement checks, each of which will be for 50% of the settlement amount allocated to that individual by the Settlement Administrator.  The first check will be allocated as wages, and the Plaintiff's portion of payroll taxes will be withheld from this payment, which will be reported on IRS Form W-2. The second check will be allocated as liquidated damages under the FLSA and/or applicable state law, and payroll taxes will not be withheld from this payment, which will be reported on an IRS Form 1099.  The Settlement Administrator shall be responsible for tax withholding from W-2 portions of the settlement payments, as appropriate, and remitting to the appropriate federal, state and local taxing authorities all taxes required by law.

D.    Each Plaintiff shall obtain his or her own independent tax advice about the proper income reporting and tax obligations for any and all payments and/or other remuneration he or she receives or obtains pursuant to this Agreement, and shall further assume the responsibility of remitting to the Internal Revenue Service and any other relevant taxing authorities any and all amounts required by law to be paid out of any monies received, or other remuneration obtained, under this Agreement, without any advice or other contribution whatsoever from any of the Released Parties, Class Counsel or the Settlement Administrator.  Nothing in this Agreement may be construed as Defendant, Defendant's Counsel, Class Counsel, or the Settlement Administrator providing any advice regarding the reporting or payment of taxes or the tax consequences of a Plaintiff's participation in any portion of this Agreement.

E.    Each check payable to Plaintiff shall have the following language printed on the back of the check:

18

I knowingly and voluntarily release, waive, and discharge Change Technology Enabled Services, LLC ("Change"), including its predecessors and successors and its past, present, and future parents, subsidiaries, , owners, officers, directors, employees, agents, insurers, and attorneys, and all Change Healthcare, Inc. direct and indirect subsidiaries, from any and all known and unknown claims for wages and compensation through [date certain – either October 28, 2021 or the date on which the Court grants Preliminary Approval, whichever is earlier], under the FLSA, or any applicable state or local laws (including statutory and common law claims for breach of contract, unjust enrichment, or other common law claims relating to wages) arising from my employment with Change.

F.　　Plaintiffs shall have ninety (90) days to cash, deposit, or otherwise negotiate each of their settlement checks, which checks shall indicate on their face that they will be void after ninety (90) days. Settlement checks that have not been cashed, deposited, or otherwise negotiated within 90 days shall be null and void. Any amounts not cashed by Plaintiffs shall revert to Defendant. However, the Parties agree that this Agreement shall not be voided or nullified if the Court decides that a reversion is improper, and instead any uncashed amounts will be paid to a jointly selected and court-approved *cy pres* recipient.

G.　　The Settlement Administrator will be responsible for preparing and distributing IRS Forms W-2 and Miscellaneous Income Forms 1099 to Plaintiffs reflecting the amount of settlement monies distributed to each Plaintiff from the Settlement Fund.

## 8.　　REASONABLE COMPROMISE OF BONA FIDE DISPUTE

The Parties agree that the terms of this Agreement represent a reasonable compromise of disputed issues arising from a bona fide dispute over FLSA coverage and the merits of the Named Plaintiffs' unpaid wage claims and those of the Settlement Class Members and alleged damages and agree to represent the same to the Court. The Parties further agree that the proposed Settlement is fair, reasonable, and adequate and a good-faith compromise of the claims of the Named Plaintiffs and the Settlement Class Members and is in the best interests of the Named Plaintiffs and the Settlement Class Members.

19

**9. VOIDING THE AGREEMENT**

      A.     If the Court refuses to approve the Agreement or any material term or condition in it, then either Party shall have the right to rescind or void this Agreement by providing written notice of their election to do so to counsel for the other Party within fourteen (14) business days after the Court's refusal. If, in approving this Agreement, the Court reduces the amount of payment that will be made to Class Counsel for attorneys' fees or costs, such reduction shall not be considered a material change to a term or condition of this Agreement, and this Agreement shall remain in effect. Further, if in approving this Agreement, the Court reduces the amount of or eliminates the service awards to be paid to the Named Plaintiffs and Opt-In Plaintiffs, such reduction or elimination shall not be considered a material change to a term or condition of this Agreement, and this Agreement shall remain in effect. If the Court refuses to allow a reversion, that shall not be considered material change and the parties shall proceed to select a *cy pres* recipient consistent with ¶ 7(F).

      B.     In the event that either Party exercises the right to rescind or void this Agreement, as set forth in Section 9.A., then this Agreement shall be deemed null and void and shall have no force or effect and shall be inadmissible as evidence and of no probative value. If this Agreement is rescinded or voided, the Parties will return to the status quo ante. The Parties represent, warrant, and covenant that neither the Agreement nor any discussions, conversations, or negotiations leading to execution of the Agreement will be used as evidence or referred to for any purpose whatsoever.

**10. MUTUAL FULL COOPERATION**

      Counsel for the Parties agree to and shall use their best efforts to cooperate fully with each other in good faith and to take all actions reasonably necessary to implement the terms of

this Agreement and to secure court approval of this Settlement.

## 11. <u>CONSTRUCTION</u>

The Parties agree that the terms and conditions of this Agreement are the result of arm's-length negotiations between the Parties, and that Class Counsel have represented the Named Plaintiffs and Settlement Class Members in these negotiations. As such, this Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her, or its counsel participated in the drafting of this Agreement.

## 12. <u>CAPTIONS AND INTERPRETATIONS</u>

Section titles or captions contained in this Agreement are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any of its provisions.

## 13. <u>MODIFICATION</u>

This Agreement, including any attachments, may not be changed, altered, or modified, except in a writing signed by the Parties and their counsel. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties and their counsel and approved by the Court.

## 14. <u>INTEGRATION CLAUSE</u>

This Agreement including any attachments, which are incorporated fully herein, contain the entire agreement between the Parties relating to the settlement of the Litigation, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged in this Agreement. No rights under this Agreement may be waived except in a writing signed by the Parties and their counsel.

15. **BINDING ON ASSIGNS**

This Agreement shall be binding upon and inure to the benefit of the Parties and their

respective heirs, trustees, executors, administrators, successors and assigns.

16. **COUNTERPARTS & SIGNATURES**

This Agreement may be executed in counterparts, and when counsel have signed and

delivered at least one such counterpart, each counterpart shall be deemed an original, and, when

taken together with other signed counterparts, shall constitute one Agreement.  This Agreement

may be executed by facsimile or electronic signatures, PDF, or email, which shall be deemed to

be originals.

17. **APPLICABLE LAW**

This Agreement shall be governed by and construed in accordance with federal law and

the law of the State of Tennessee, to the extent federal law does not apply.

18. **RETENTION OF JURISDICTION**

The Parties intend to request that the Court retain jurisdiction with respect to the

implementation and enforcement of the terms of the Agreement, and all Parties submit to the

jurisdiction of the Court for purposes of implementing and enforcing the terms of this

Agreement.

*[THIS SPACE IS INTENTIONALLY LEFT BLANK.  SIGNATURE PAGE FOLLOWS.]*

**IT IS SO AGREED.**

Dated:____11/30/2021____            **PLAINTIFF CATHERINE EALY-SIMON**

By:   *Catherine Ealy-Simon*
      _____
      Catherine Ealy-Simon

22

Dated: 12/01/2021

**PLAINTIFF KRISTIN WILSON**

By: *K Wilson*
_____
Kristin Wilson

Dated:_____

**PLAINTIFF  VERONDA DELANCY**

By: _____
VeRonda DeLancy

Dated:_____

**PLAINTIFF PATRICE JOHNSON**

By: _____
Patrice Johnson

Dated:_____

**SOMMERS SCHWARTZ, P.C.**

By: _____
Jason J. Thompson
Attorney for Plaintiffs

Dated:_____

By: _____
On behalf of Defendant,
Change Healthcare Technology Enabled Services, LLC
Name:_____
Title:_____

Dated:_____

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

By: _____
Elizabeth S. Washko
Attorney for Defendant

23

Dated:_____          **PLAINTIFF KRISTIN WILSON**

By:     _____
        Kristin Wilson


Dated: 11/30/2021_____        **PLAINTIFF  VERONDA DELANCY**

By:     _VeRonda C_____
        VeRonda DeLancy


Dated:_____          **PLAINTIFF PATRICE JOHNSON**

By:     _____
        Patrice Johnson


Dated:_____          **SOMMERS SCHWARTZ, P.C.**

By:     _____
        Jason J. Thompson
        Attorney for Plaintiffs


Dated:_____          By:     _____
                                    On behalf of Defendant,
                                    Change Healthcare Technology Enabled Services,
                                    LLC
                                    Name:_____
                                    Title:_____


Dated:_____          **OGLETREE, DEAKINS, NASH, SMOAK &
                                    STEWART, P.C.**



                                    By:     _____
                                            Elizabeth S. Washko
                                            Attorney for Defendant


23

Dated:_____        **PLAINTIFF KRISTIN WILSON**

By:    _____
       Kristin Wilson


Dated:_____        **PLAINTIFF  VERONDA DELANCY**

By:    _____
       VeRonda DeLancy


Dated: 11/30/2021                  **PLAINTIFF PATRICE JOHNSON**

By:    *Patrice johnson*
       _____
       Patrice Johnson


Dated:_____        **SOMMERS SCHWARTZ, P.C.**

By:    _____
       Jason J. Thompson
       Attorney for Plaintiffs


Dated:_____        By:    _____
       On behalf of Defendant,
       Change Healthcare Technology Enabled Services,
       LLC
       Name:_____
       Title:_____


Dated:_____        **OGLETREE, DEAKINS, NASH, SMOAK &
                                   STEWART, P.C.**


                                   By:    _____
                                          Elizabeth S. Washko
                                          Attorney for Defendant

23

Dated:_____    **PLAINTIFF KRISTIN WILSON**

By: _____
     Kristin Wilson

Dated:_____    **PLAINTIFF  VERONDA DELANCY**

By: _____
     VeRonda DeLancy

Dated:_____    **PLAINTIFF PATRICE JOHNSON**

By: _____
     Patrice Johnson

Dated: December 13, 2021    **SOMMERS SCHWARTZ, P.C.**

By: _____
     Jason J. Thompson
     Attorney for Plaintiffs

Dated: November 30, 2021    By: _____
     On behalf of Defendant,
     Change Healthcare Technology Enabled Services, LLC
     Name: Loretta A. Cecil
     Title:  EVP & General Counsel

Dated: December 13, 2021    **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

By: _____
     Elizabeth S. Washko
     Attorney for Defendant

23