# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **CATHERINE EALY-SIMON** and **KRISTIN WILSON**, individually and on behalf of all other similarly situated individuals,<br><br>Plaintiffs,<br>v.<br><br>**CHANGE HEALTHCARE TECHNOLOGY ENABLED SERVICES, LLC**,<br><br>Defendant. | Case No.: 3:20-cv-00521<br><br>District Judge Eli J. Richardson<br>Magistrate Judge Jeffery S. Frensley<br><br>**CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES** |

Pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b), Class Counsel motions the Court approve an award of attorneys' fees and expenses as set forth, and on the grounds provided, in the attached Memorandum of Law.

Dated: February 9, 2022

Respectfully submitted,

/s/ *Jason J. Thompson*
Jason J. Thompson (admitted *pro hac vice*)
Rod M. Johnston (admitted *pro hac vice*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
jthompson@sommerspc.com
rjohnston@sommerspc.com

Gregory F. Coleman, BPR No. 014092
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Phone: (865) 247-0080
greg@milberg.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **CATHERINE EALY-SIMON** and **KRISTIN WILSON**, individually and on behalf of all other similarly situated individuals,<br><br>  Plaintiffs,<br>v.<br><br>**CHANGE HEALTHCARE TECHNOLOGY ENABLED SERVICES, LLC**,<br><br>  Defendant. | Case No.: 3:20-cv-00521<br><br>District Judge Eli J. Richardson<br>Magistrate Judge Jeffery S. Frensley<br><br>**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF AN AWARD OF ATTORNEYS' FEES AND EXPENSES** |

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................. 1

I.  The Requested Attorneys' Fees Should be Approved as Fair and Reasonable ................. 1

    A.  The Court Should Adopt the Percentage Approach to Award Attorneys' Fees .... 1

    B.  The *Ramey* Factors Weigh in Favor of Awarding the Requested Fees ................. 3

        i.  *The settlement is exceptional and provides a substantial benefit to the class* ................................................................................................................ 3

        ii.  *Society's stake in rewarding attorneys who produce the benefits to the class in order to maintain an incentive to others* ................................. 5

        iii.  *Class Counsel undertook considerable risk of nonpayment in litigating this case on a contingency basis* ............................................................... 7

        iv.  *An analysis of the value of the services provided on an hourly basis supports approval of the requested fees* ....................................................... 8

        v.  *The complexity of this litigation weighs in favor of the requested award* ................................................................................................................ 11

        vi.  *Class counsel's skill supports approval* ..................................................... 11

        vii.  *The requested fee award is comparable to fee awards in similar cases* .. 12

II.  Class Counsel Are Entitled to Recover Their Litigation Expenses ................................. 13

# INDEX OF AUTHORITIES

**Federal Cases**

*Blum v. Stenson*,
   465 U.S. 886 (1984) .................................................................................................. 2

*Boeing Co. v. Van Gemert*,
   444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) ........................................... 1, 2

*Bowling v. Pfizer, Inc.*,
   102 F.3d 777 (6th Cir. 1996) .................................................................................. 2, 3

*Brotherton v. Cleveland*,
   141 F. Supp. 2d 907 (S.D. Ohio 2001) ..................................................................... 13

*Connectivity Sys. Inc. v. Nat'l City Bank*,
   No. 2:08-CV-1119, 2011 WL 292008 (S.D. Ohio Jan. 26, 2011) .............................. 2

*Daoust v. Maru Restaurant, LLC*,
   2019 WL 2866490 (E.D. Mich. July 3, 2019) ........................................................... 8

*Di Giacomo v. Plains All Am. Pipeline*,
   2001 WL 15 (S.D. Fla. Dec. 19, 2001) ................................................................... 10

*Dillow v. Home Care Network, Inc.*,
   2018 WL 4776977, (S.D. Ohio Oct. 3, 2018) ........................................................... 8

*Dillworth v. Case Farms Processing, Inc.*,
   2010 WL 776933 (N.D. Ohio Mar. 8, 2010) ....................................................... 5, 12

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*,
   137 F.R.D. 240 (S.D. Ohio 1991) ........................................................................... 11

*Fegley v. Higgins*,
   19 F.3d 1126 (6th Cir. 1994) ..................................................................................... 1

*Feiertag v. DDP Holdings, LLC*,
   2016 WL 4721208 (S.D. Ohio Sep. 9, 2016) ............................................................ 8

*Gascho v. Glob. Fitness Holdings, LLC*,
   822 F.3d 269 (6th Cir. 2016) ..................................................................................... 2

*Gentrup v. Renovo Servs., LLC*,
   2011 WL 2532922 (S.D. Ohio, June 24, 2011) .................................................. 6, 11

*Gonter v. Hunt Valve Co., Inc.*,
   510 F.3d 610 (6th Cir. 2007) ..................................................................................... 6

*In re Aremissoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002) .................................................................................. 10

*In re Cardinal Health Inc. Sec. Litig.*,
   528 F. Supp. 2d 752 (S.D. Ohio 2007) .......................................................... 1, 2, 8, 9

*In re DPL, Inc., Sec. Litig.*,
   307 F. Supp. 2d 947 (S.D. Ohio 2004) .................................................................. 1, 3

*In re Prandin Direct Purchaser Antitrust Litig.*,
   2015 U.S. Dist. LEXIS 5964, 2015 WL 1396473 (E.D. Mich. 2015) ....................... 2

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ...................................................................................... 9

*In re S. Ohio Corr. Facility*,
   173 F.R.D. 205 (S.D. Ohio 1997) ............................................................................ 12

*In re Sulzer Orthopedics, Inc.*,
   398 F.3d 778 (6th Cir. 2005) ..................................................................................... 3

*In re Telectronics Pacing Sys., Inc.*,
   137 F. Supp. 2d 1029 ............................................................................................... 13

*In re Washington Power Supply System Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ..................................................................................... 2

*In re Xcel Energy, Inc., Securities, Derivative & "'ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ..................................................................... 10

*Johnson*,
   2013 WL 2295880 .................................................................................................... 12

*Kentucky Restaurant Concepts, Inc.*,
   2004 WL 2756966 (6th Cir. Jan. 12, 2005) .............................................................. 5

*Kritzer v. Safelite Solutions, LLC*,
   2012 WL 1945144 (S.D. Ohio May 30, 2012) ......................................................... 6

*Lowther v. AK Steel Corp.*,
   2012 WL 6676131 (S.D. Ohio Dec. 21, 2012) .................................................... 9, 11

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................................... 10

*McHugh v. Olympia Ent., Inc.*,
   37 F. App'x 730 (6th Cir. 2002) ................................................................................ 9

*Rabin v. Concord Assets Group, Inc.*,
  1991 WL 275757 (S.D.N.Y. 1991) .................................................................................. 10

*Ramey v. Cincinnati Enquirer, Inc.*,
  508 F. 2d 1188 (6th Cir. 1974) .................................................................................... 2, 3

*Rawlings v. Prudential Properties, Inc.*,
  9 F.3d 513 (6th Cir. 1993) .......................................................................................... 2, 3

*Rikos v. Proctor & Gamble Company*,
  2018 WL 2009681 (S.D. Ohio Apr. 30, 2018) .................................................................. 13

*Roberts v. Texaco, Inc.*,
  979 F. Supp. 185 (S.D.N.Y. 1997) .................................................................................. 10

*Rotuna v. W. Customer Mgmt. Grp., LLC*,
  No. 4:09CV1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010) .................................... 8, 12

*Shaw v. Toshiba America Information Systems, Inc.*,
  91 F. Supp. 2d 942 (E.D. Tex. 2000) .............................................................................. 6, 7

*Smillie v. Park Chem. Co.*,
  710 F. 2d 271 (6th Cir. 1983) .......................................................................................... 11

*Steiner v. Am. Broad. Co.*,
  248 Fed. Appx. 780 (9th Cir. 2007) ................................................................................. 10

*United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*,
  732 F.2d 495 (6th Cir.1984) ............................................................................................. 1

*Ware v. CKF Enterprises, Inc.*,
  2020 WL 2441415 (E.D. Kent. May 12, 2020) ................................................................... 8

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
  899 F. Supp. 1297 (D.N.J. 1995) ..................................................................................... 10

**Federal Statutes**

29 U.S.C. § 216(b) ................................................................................................................. 1

# INTRODUCTION

The settlement reached by the parties provided for an award of attorneys' fees and costs. (Exhibit A, Settlement Agreement at ¶ 5(A)). Class Counsel requests the Court award their actual litigation expenses incurred, $14,756.49 and attorneys' fees of $833,333.33. Class Counsel's work has produced an excellent result for the Class Members, the request is well-supported by law and fact – meeting all tests for fee and cost awards – and thus, the Court should award Class Counsel their requested fees and litigation costs.

## I. The Requested Attorneys' Fees Should Be Approved as Fair and Reasonable

The FLSA requires courts to award "a reasonable attorney's fee . . . and costs of the action." 29 U.S.C. § 216(b). The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)). Turning to Rule 23, the amount of attorneys' fees provided in the Settlement of this agreement satisfies the Sixth Circuit's standard for Rule 23 fee and costs awards in settlement.

### A. The Court Should Adopt the Percentage Approach to Award Attorneys' Fees

When assessing the reasonableness of a fee petition, district courts engage in a two-part analysis. See *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007). First, the district court determines the method for calculating the attorneys' fees: either the percentage of the fund approach[1] or the lodestar approach. *Id*. (citing *In re DPL, Inc., Sec. Litig.*,

---

[1] To determine the amount of the "fund" for purposes of this analysis, courts include all amounts benefitting the class, including those amounts typically born by the class, such as attorneys' fees

1

307 F. Supp. 2d 947, 949-51 (S.D. Ohio 2004)). The district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved". *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Second, the district court must analyze and weigh the six factors described by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc*., 508 F. 2d 1188 (6th Cir. 1974).

In the Sixth Circuit, district courts have the discretion "to determine the appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, and the particular circumstances of the actual cases pending before the Court" using either the percentage or lodestar approach. *In re Cardinal Health Inc. Sec. Litig*., 528 F. Supp. 2d at 761 (citing *Bowling v. Pfizer, Inc*., 102 F.3d 777, 779 (6th Cir. 1996)). In this district, "the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011).

In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the "common fund doctrine," a reasonable fee may be based "on a percentage of the fund bestowed to the class." The purpose of this doctrine is that "those who benefit from the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Power Supply System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). District courts within the Sixth Circuit follow this rule. *See, e.g., In re Prandin Direct Purchaser Antitrust Litig*.,

---

and notice and administration costs. As the Sixth Circuit explained, when conducting a percentage of the fund analysis, "Attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs of administration)." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016). To determine the amount of the benefit conferred, courts look to the total amount made available to the class, rather than the amount ultimately claimed by class members. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980).

2015 U.S. Dist. LEXIS 5964, 2015 WL 1396473, at *4 (E.D. Mich. 2015) (granting fee award of one-third of the gross settlement fund); *In re Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780-82 (6th Cir. 2005) (affirming individual fee awards made from a common benefit fund based on the gross settlement amount); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996) ("It is within the district court's discretion to determine the 'appropriate method for calculating attorney's fees.'") (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir.1993)); *In re DPL Inc., Sec. Litig.*, 307 F. Supp. 2d 947, 951 (S.D. Ohio 2004) (noting that "the percentage of the fund method more accurately reflects the results achieved") (quoting *Rawlings*, 9 F.3d at 516).

Here, Class Counsel requests the Court adopt the percentage approach to award attorneys' fees in the amount of 1/3 of the Gross Fund, or $833,333.33.

**B.     The *Ramey* Factors Weigh in Favor of Awarding the Requested Fees**

In reviewing the reasonableness of the requested award, the Sixth Circuit requires district courts to consider six factors:

1. The value of the benefits rendered to the class;

2. Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

3. Whether the services were undertaken on a contingent fee basis;

4. The value of the services on an hourly basis;

5. The complexity of the litigation; and

6. The professional skill and standing of counsel on both sides.

*Ramey*, 508 F. 2d at 1194-97. Each of these factors weighs in favor of awarding the requested attorneys' fees.

*i.     The settlement is exceptional and provides a substantial benefit to the class*

Class Counsel's work resulted in a settlement of $2,500,000.00 Of this amount,

3

Case 3:20-cv-00521   Document 58   Filed 02/09/22   Page 9 of 20 PageID #: 514

$1,596,791.18[2] is being made available to the 3,503 possible Patient Service Representatives ("PSRs") in the class.[3] As of the 2-4-2022 Status Report from the Settlement Administrator, the number of opt outs is only 13. (*See* Exhibit C – Rust Consulting 2-4-2022 Status Report). Thus the average wage benefit based on a simple analysis of the total possible number of claimants and the Net Settlement Amount is nearly $500 per person.[4] Based on Class Counsel's past experience in numerous wage and hour class settlements structured just like the instant settlement, the longer tenured workers will receive up to $2,000 each.

Based on the analysis of maximum damage recovery as conducted by Class Counsel and the expert economist of $1,908,695.00 to $2,866,042.00 – and without taking into consideration *any* of the factual and legal defenses identified above – the $2,500,000 settlement equates to 87%-131% of Defendants' exposure for all unpaid federal and state law wages asserted, or that could be asserted, in this litigation. (Exh. B, Thompson Decl. at ¶2; Exh. B to Motion for Preliminary Approval – Declaration of Kevin J. Stoops (ECF No. 53-3)). Assuming the Court grants Class Counsel's Fee and Expense request, the $1,596,791.18 pool available to PSRs still represents approximately 56%-83% of the maximum calculated unpaid wages – a robust amount for settlements. (*Id.*) Under any analysis of the settlement against the possible recovery if Plaintiffs

---

[2] This is the remaining fund after deducting the $833,333.33 in fees, $14,756.49 in actual expenses, $20,000 in incentive awards and up to $35,119 for the Settlement Administrator (Rust) bid, all of which is subject to final court approved numbers.

[3] *See* Exhibit C – Rust 2-4-2022 Status Report. This was increased from the estimated 3,448 PSRs at the time of and in the Settlement Agreement, after Defendant finalized their record search.

[4] The actual amounts will, however, require a more detailed analysis since the Settlement Agreement calls for several adjustments to ensure PSRs are compensated based on the number for work weeks, work weeks that exceed 40-hours and thus trigger overtime pay (1.5 times), and strength of state law claims. (*See* Exhibit A, Settlement Agreement at ¶5(C)(1)-(6). A declaration from the Settlement Administrator will be filed with the Final Fairness Motion that outline and list the specific number of workers provided notice, opting out, and receiving benefits, as well as detailed information on the amounts paid to the workers, on average and by high and low amounts (the settlement funds are being distributed based on the number of work weeks).

proceed, overcame all defenses, certified all the state law classes, and prevailed on the merits – and possibly an appeal under Rule 23(f) or of the final judgment – the current settlement is fairly characterized as exceptional and provides a substantial benefit to the class. In fact the settlement amount is far greater than the ordinary recovery in class cases. *See,* Fredrick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends III: *What Explains Settlements in Shareholder Class Actions?* (National Economic Research Assocs. (NERA) (June 1995) (finding an average allocation of 7% to 11% for class members; *See also, Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (finding a settlement of approximately one-third of claimed unpaid wages, before deduction of attorneys' fees and costs, to be "exceptional"). This is critical because the Sixth Circuit has recognized that the degree of success is among the most important of all factors in determining the reasonableness of a fee award. *Kentucky Restaurant Concepts, Inc.*, 2004 WL 2756966, at *5 (6th Cir. Jan. 12, 2005).

Further, the settlement provides immediate relief to class members, eliminating additional risks they would otherwise face if the litigation continued to summary judgment on the merits, trial, and appeal. Absent settlement, the parties would have engaged in additional and extensive discovery (including written discovery and multiple depositions of Plaintiffs and management witnesses), as well as additional motion practice (decertification of the FLSA collective, certification of the Rule 23 claims and summary judgment motions). While Plaintiffs maintain that they would ultimately prevail on these issues, they recognize the inherent risk of litigation, particularly in a case of this magnitude. By agreeing to the Settlement, those risks are eliminated and participating class members are guaranteed to receive an excellent recovery *now*, rather than to possibly receive a recovery – of more, the same or perhaps even less – years from now.

> ii. *Society's stake in rewarding attorneys who produce the benefits to the class in order to maintain an incentive to others*

Society's stake in rewarding attorneys who bring class action wage-and-hour cases favors the requested award. *Gentrup v. Renovo Servs., LLC*, 2011 WL 2532922, at *4 (S.D. Ohio, June 24, 2011) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage-and-hour cases, as these are frequently complex matters."). Here, Class Counsel recovered unpaid wages for 3,503 current and former PSRs. Without this lawsuit, few of these individuals would have known about their potential claims, let alone had the motivation or resources to pursue them. *See Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own."). Moreover, the requested award—331/3% of the common fund—is within the range approved by courts in this Circuit, but not so high that it would constitute a windfall. *See Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007). This is especially true in light of the extensive work performed by Class Counsel prior to and during the litigation, the additional work Class Counsel will perform during settlement administration to ensure that participating Collective Members receive the Notice Packet, receive individual payments, receive reissued checks as necessary, and are aware of the settlement check void date. (Exh. B, Thompson Decl. at ¶2). In fact, as of the filing of the instant motion, counsel is involved in post-settlement work with Defendant to ensure the class list was accurate, inclusive of all persons meeting the description of the class and that notice was adequate.[5] Accordingly, this factor supports the requested fees. Lastly, Courts reference the NERA study, cited in 2000 as "[t]he most complete analysis of fee awards in class actions conducted to date." *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000). The study found that "regardless

---

[5] The parties located 8 more PSRs as a result of their efforts, all of whom will be allowed to participate in the settlement now.

6

of size, attorneys' fees average approximately 32% of the [class action] settlement," although "the average result achieved for class members was only 7% to 11% of claimed damages." *Shaw*, 91 F. Supp. 2d at 988. Based on the foregoing, the proposed Settlement in the present case is exemplary.

> ### iii. *Class Counsel undertook considerable risk of nonpayment in litigating this case on a contingency basis*

Despite the risks associated with prosecuting this case, Class Counsel took this case solely on a contingency fee basis[6] and were prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. (Exh. B, Thompson Decl. at ¶3). Class Counsel's investigation began based on initial interviews with the Named Plaintiffs. At this time, all of the critical time and payroll records were in Defendants' possession, and Class Counsel had to proceed in reliance of PSRs' recollections of the of the time they spent performing pre- and post-shift work activities. (*Id.*). Had PSRs' recollections been mistaken by even a few minutes, their claims would have been susceptible to a *de minimis* defense. Further, Class Counsel could not rule out the possibility that the PSRs they interviewed were paid for their pre- and post-shift work activities but did not know it.

Even assuming liability could be established, Class Counsel incurred the risk that Class damages would be too low to offset the costs advanced to investigate and prosecute this matter. Further, one of Defendants' main arguments was that a large number of PSRs could not advance any wage claim as a result of their employment being subject to third-party employment agreements between plaintiffs and non-party entities. If Defendants succeeded on one or more of their many defenses, Class Counsel could have lost substantial litigation expenses and hundreds

---

[6] The Named Plaintiffs retained Plaintiffs' Counsel pursuant to a 40% contingency fee agreement, which was obviously more than the requested 1/3.

7

of thousands of dollars in time worked.

Finally, Class Counsel incurred substantial risks that this action would not be able to proceed on a collective basis. Because of differences between work locations and individualized issues with respect to the activities performed by PSRs, and time spent on said activities, pre-and post-shift, Defendants would have propounded discovery on dozens, if not hundreds, of Collective Members, many of whom would have slim incentive to respond given the perceived small value of individual claims in this case. Further, because of the wide geographical scope of the class, a decertification order could have potentially resulted in the case being split into several actions and transferred to jurisdictions around the country.

Accordingly, there can be no question that Class Counsel had a substantial risk of non-payment and this factor supports the requested fees.

### iv. *An analysis of the value of the services provided on an hourly basis supports approval of the requested fees*

Although not required under Sixth Circuit jurisprudence,[7] as a way to "cross check" the fourth *Ramey* factor, the value of the services rendered, district courts sometimes calculate the lodestar figure and compare it to the amount requested under the percentage approach. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 761. The number of hours expended "creating, protecting, or preserving the fund recovered" is then multiplied by a "reasonable hourly rate" to produce a lodestar figure. *Id.*

---

[7] Some examples of FLSA settlements where no lodestar crosscheck was performed include: *Rotuna v. West Customer Management Group, LLC*, 2010 WL 2990989 (N.D. Ohio June 15, 2010); *Ware v. CKF Enterprises, Inc.*, 2020 WL 2441415 (E.D. Kent. May 12, 2020); *Daoust v. Maru Restaurant, LLC*, 2019 WL 2866490 (E.D. Mich. July 3, 2019). *See also*, *Feiertag v. DDP Holdings, LLC*, 2016 WL 4721208, at *7 (S.D. Ohio Sep. 9, 2016) ("Performing a cross-check of the attorney-fee request using Class Counsel's lodestar is optional."); *Dillow v. Home Care Network, Inc.*, 2018 WL 4776977, at *6, (S.D. Ohio Oct. 3, 2018) (lodestar cross-check of percentage of the fund fee award is "unnecessary").

8

In doing so, the Court may look at "national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys." *McHugh v. Olympia Ent., Inc.*, 37 F. App'x 730, 740 (6th Cir. 2002)). The FLSA is an area of the law practiced by a small subset of the bar, with even fewer attorneys capable of handling a case of this size and complexity, against a company with seemingly unlimited resources. Class Counsel are specialists within the FLSA practice and have a proven track records of success in FLSA cases. (Exh. B, Thompson Decl. at ¶2). Accordingly, in calculating lodestar, Class Counsel utilized the hourly rates they charge throughout the country in connection with their FLSA cases. As recorded contemporaneously during the case, and listed by person and title and rate, Sommers Schwartz hours total 409 totaling $223,175.00 (Exh. B, Thompson Decl. at ¶10). Greg Colman Law PC hours total 58, and at their standard billable rates, equal another $12,516.70 in billed time. The grand total for Class Counsel is thus, 467 hours totaling $235,691.00 and a **blended hourly rate of $504.69.**

The lodestar figure may be increased by "multiplying it by a factor it deems reasonable (the 'lodestar multiplier')." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 761. A variety of factors are examined in determining the appropriate multiplier, including, "the nature of the case, the market for such legal service, the risk involved and the results achieved." *Id*. The multiplier is designed to reward Class Counsel for taking on more risk, providing "superior quality" representation, or achieving a greater settlement. *Id*. Courts frequently award multipliers between one and four. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) (quoting 3 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 14.03 at 14-5 (3d ed. 1992)). In some cases the awarded multipliers are even higher. *See e.g.*, *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 767 (lodestar multiplier of 6.0, noting that the typical lodestar multiplier in large class actions "ranges from 1.3 to 4.5"); *Lowther v. AK Steel*

9

*Corp.*, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multiplier ranging from 4.3 to 8.5 to be reasonable); *Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming award with multiplier of 6.85); *see also* Newberg, *Attorney Fee Awards,* § 14.03 at 14-5 (1987) ("multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."); *Rabin v. Concord Assets Group, Inc.*, 1991 WL 275757 (S.D.N.Y. 1991) (4.4 multiplier); *In re Xcel Energy, Inc., Securities, Derivative & "'ERISA" Litig.*, 364 F. Supp. 2d 980, 998-99 (D. Minn. 2005) (approving 25% fee, resulting in 4.7 multiplier); *In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134-35 (D.N.J. 2002) (approving 28% fee, resulting in 4.3 multiplier); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (approving 33.3% fee, resulting in "modest multiplier of 4.65"); *Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 15 34633373, at *10-11 (S.D. Fla. Dec. 19, 2001) (approving 30% fee, resulting in 5.3 multiplier); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (5.5 multiplier); *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (9.3 multiplier), *aff'd*, 66 F.3d 314 (3d Cir. 1995).

Application of the requested $833,333.33 fee to the above lodestar figures will result in a multiplier of no more than 3.258. The final multiplier amount will certainly fall as Class Counsel performs additional work in connection with preparing for and briefing final approval and dealing with issues related to settlement administration (estimated to be about $20,000). As set forth above, this range of multiplier lands within the range of multipliers approved in the Sixth Circuit and throughout the country. Taking all of this into consideration, the lodestar crosscheck thus illustrates that Class Counsel's fee award is well within the range of reasonableness, particularly for a case in which the class's reaction has been positive and considering the time and labor expended, the

10

magnitude of the litigation, the risks, and the extraordinary monetary results achieved for the Collective Members.

### v. *The complexity of this litigation weighs in favor of the requested award*

Wage-and-hour collective and class actions are "frequently complex matters." *Gentrup*, 2011 WL 2532922, at *4. This is particularly true here, where Plaintiffs alleged off-the-clock claims across facilities located throughout the country, some of which were subject to collective bargaining agreements. Further, the claims implicated several state wage and hour laws that Class Counsel were required to not only research but also to compute state specific damage evaluations to assist in persuading Defendants to enter into the Settlement. At the same time, Defendants raised several factual and legal defenses which could have torpedoed Class case, or at the very least, substantially limited the amount of damages Class were able to recover. Resolving the merits, damages, and procedural issues would have been risky, costly, and time consuming. Accordingly, the litigation was difficult and complex, and this factor weighs in favor of awarding the requested fees.

### vi. *Class counsel's skill supports approval*

Class counsel have actively and aggressively litigated this case against the formidable defense mounted by Defendant. Counsel's efforts included extensive document discovery and tedious analyses of damages-related documents and data. The skill and efficiency of attorneys is evidenced by their local reputations as well as their experience and expertise in the area. *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249 (S.D. Ohio 1991). In assessing the skill of Class Counsel, it is also important to assess the quality of defense counsel as well, to determine the quality of service Class Counsel rendered. *See Lowther*, 2012 WL 6676131, at *3 (citing *Smillie v. Park Chem. Co.*, 710 F. 2d 271, 275 (6th Cir. 1983)). For the reasons stated

11

in the Declaration of Jason J. Thompson Class Counsel are qualified, experienced, and have substantial credentials representing plaintiffs, particularly employees, in class and collective action litigation. (Exh. B, Thompson Decl. at ¶¶4-9) Likewise, Defendants are represented by experienced and skilled counsel at Ogletree, Deakins, Nash, Smoak & Stewart, P.C., one of the largest and most prominent law firms in the country. The lawyers representing Defendant, including two senior partners, Elizabeth S. Washko and Craig A. Cleland, have extensive experience representing employers in wage-and-hour class and collective actions. Accordingly, the professional skill and standing of counsel on both sides is substantial and this factor supports approval of the requested fee award.

### vii. *The requested fee award is comparable to fee awards in similar cases*

Lastly, although not one of the *Ramey* factors, comparing the fees requested in this case to the fees awarded in similar cases further evidences the reasonableness of Class Counsel's request for an award of 331/3% of the settlement fund. *See, e.g., Heibel*, No. 2:11-cv-00593-EAS- NMK (S.D. Ohio May 21, 2014) (approving attorneys' fees of 33%); *Struck*, No. 2:11-cv-00982- ALM-NMK (S.D. Ohio May 16, 2014) (same); *Johnson*, 2013 WL 2295880, at *6 (awarding 33% of the settlement funds in class action case); *Rotuna v. W. Customer Mgmt. Grp.*, LLC, No. 4:09CV1608, 2010 WL 2490989, at *7-8 (N.D. Ohio June 15, 2010) (approving attorneys' fees of one-third of the settlement amount in wage-and-hour class and collective action involving 1,778 employees); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (approving attorneys' fee award of one-third of the total settlement amount in wage-and-hour class and collective action); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 218 (S.D. Ohio 1997), *rev'd on other grounds*, 24 Fed. App'x 520 (6th Cir. 2001) (approving an award of $1.4 million in fees, representing 34% of the total amount of the common fund, and noting that it is

within the 20% to 50% range of reasonableness); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001) (noting that attorneys' fees awards typically range from 20% to 50% of the common fund); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1046, *decision clarified*, 148 F. Supp. 2d 936 (S.D. Ohio 2001) (same).

## II.     Class Counsel Are Entitled to Recover Their Litigation Expenses.

The Settlement Agreement provided that Class Counsel would seek an award of their expenses. (Ex. A, Settlement Agreement, at ¶5). In addition to the requested fee award, Class Counsel's request reimbursement of their reasonable out-of-pocket litigation expenses of $14,696.49.[8] The litigation expenses were incurred in connection with litigating and settling this matter and include: filing fees, mediation expenses, expert fees, legal research, photocopies, and postage. All of the litigation expenses were necessarily incurred, are reasonable, and should be approved. (Exh. B, Thompson Decl., at ¶¶16-17). Courts in the Sixth Circuit routinely approve reimbursement of such costs. *See, e.g.*, *Rikos v. Proctor & Gamble Company*, 2018 WL 2009681, at *10 (S.D. Ohio Apr. 30, 2018) (approving $360,000 in litigation expenses related to filing fees, travel, expert fees, electronic discovery, mediation fees, research, postage, telephone charges, and other litigation expenses).

Dated: February 9, 2022                                    Respectfully submitted,

/s/ *Jason J. Thompson*
Jason J. Thompson (admitted *pro hac vice*)
Rod M. Johnston (admitted *pro hac vice*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
jthompson@sommerspc.com
rjohnston@sommerspc.com

---

[8] The Rust expense is not included in this cost number, and pursuant to the Settlement Agreement it will be paid from the Net Settlement Fund. The final amount owed to Rust will not be known until the Final Fairness Hearing, but if the final amount is less than the $35,119.00 estimated, the surplus funds will be allocated to the class.

13

Gregory F. Coleman, BPR No. 014092
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Phone: (865) 247-0080
greg@milberg.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on February 9, 2022, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ *Wendy E. Vaughn*
Wendy E. Vaughn